IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TROY HERNANDEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15-cv-7865 |
| v. | ) |
| | ) Judge St. Eve |
| CIVIS ANALYTICS, INC. and ALAN FU, | ) |
| | ) |
| Defendants. | ) **JURY DEMANDED** |
| | ) |

## SECOND AMENDED COMPLAINT

Plaintiff, by counsel, alleges as follows:

### JURISDICTION AND VENUE

1. This is a civil action arising under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, and the Illinois Human Rights Act, 775 ILCS 5/1–101 *et seq.*, as amended.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this judicial district because the acts complained of arose in this district.

4. Plaintiff originally brought his charge of discrimination for unlawful national origin discrimination at the EEOC.

5. Subsequently, on November 9, 2015, the EEOC issued him a right-to-sue letter.

6. Plaintiff's nation origin discrimination charge with the EEOC was cross-filed with the Illinois Department of Human Rights ("IDHR").

7. Subsequently, on January 4, 2016, the IDHR issued him a notice of dismissal for lack of substantial evidence and order of closure.

## PARTIES

8. Plaintiff TROY HERNANDEZ was employed by CIVIS from June 2014-May 2015.

9. Defendant CIVIS ANALYTICS, INC. ("CIVIS") is a Delaware corporation.

10. CIVIS is a data science advisory and technology firm based in Chicago, Illinois.

11. ALAN FU ("FU") is the Chief Financial Officer of CIVIS.

## FACTS AND LEGAL CLAIMS

12. HERNANDEZ has a PhD in Statistics, an MS in Mathematics, and a BS in Mathematics.

13. HERNANDEZ is of Mexican ancestry.

14. HERNANDEZ applied to CIVIS in February of 2014.

15. He was not hired until May 19, 2014.

16. CIVIS delayed in hiring him because he is of Mexican descent.

17. HERNANDEZ negotiated directly with FU over his starting salary.

18. After FU's and HERNANDEZ' negotiations, HERNANDEZ was hired at a salary of $78,000.

19. This salary was significantly lower than the salaries offered to his white, non-Hispanic peers.

20. FU also wrote in an email to a CIVIS employee that he was responsible for lowering salaries at CIVIS after becoming the CFO. In fact, he bragged that he had lowered salaries.

21. FU was responsible for determining employee salaries at CIVIS, including HERNANDEZ'.

22. Accordingly, FU was directly and personally responsible for the decision to pay HERNANDEZ less than his white, non-Hispanic peers.

23. Despite a pay raise in early 2015, HERNANDEZ continued to be paid less than comparable (or less qualified) white, non-Hispanic employees at CIVIS.

24. FU, as the CFO, the person who set HERNANDEZ' starting salary, and the person who admittedly lowered salaries at CIVIS, was either responsible for or aware of the fact that HERNANDEZ continued to be paid less than comparable (or less qualified) white, non-Hispanic employees at CIVIS.

25. HERNANDEZ continued to be discriminatorily paid less than those employees until he quit.

26. During HERNANDEZ' employment, FU revealed his animus toward Hispanics in a variety of ways. As one example, when an employee sent him a message in Spanish, he replied "I don't speak poor what does that mean?"

27. Animus was also shown by a Vice President and Co-Founder. In a conversation HERNANDEZ had with her about hiring more diverse staff in late January 2015, she said CIVIS cannot afford to "train people on the job," showing that CIVIS as a company presumes that minorities are less competent than non-Hispanic whites and will need more training. (Meanwhile, non-Hispanic white males were trained on the job and no one said that doing so was a waste of time or resources).

28. In early February 2015, several white, non-Hispanic men were promoted.

29. HERNANDEZ was not promoted although he was just as qualified as they were, if not more so.

30. Animus at CIVIS was further shown in late February 2015, when the VP of Research and Development heard a co-worker tell HERNANDEZ he had a "fake Mexican last name," implying that he thought HERNANDEZ did not qualify as being a "real" Mexican. This VP did nothing in response to this comment.

31. HERNANDEZ quit in May 2015.

32. During the entirety of his employment with CIVIS, Hernandez met its legitimate business expectations.

33. In fact, he often exceeded these expectations, and was more qualified than a number of CIVIS employees senior to him.

34. The actions and omissions of CIVIS and FU violate 42 U.S.C. § 1981.

35. Specifically, the actions and omissions of FU violate 42 U.S.C. § 1981 because he was personally responsible for HERNANDEZ' discriminatorily unequal pay, and the actions and omissions of CIVIS violate 42 U.S.C. § 1981 because it was responsible for HERNANDEZ' discriminatory delay in hiring, discriminatorily unequal pay, and its decisions to discriminatorily promote others and not HERNANDEZ.

36. CIVIS' actions and inactions as described above further constitute illegal discrimination based on national origin in violation of both Title VII and the Illinois Human Rights Act.

37. As a result of defendants' actions, HERNANDEZ has suffered lost earning potential and emotional distress and has had to hire an attorney to help him remedy the violations of his federally-protected rights.

38. Defendants' actions were done with reckless indifference to HERNANDEZ' rights and necessitate an award of punitive damages to punish them and others like them from committing such conduct in the future.

WHEREFORE plaintiff requests that judgment be entered in his favor and against defendants and that he be awarded all remedies to which he is entitled under the law, including but not limited to compensatory damages, punitive damages, attorney's fees and costs.

**Plaintiff Demands Trial by Jury**

|  |  | BY: | s/ Steven J. Molitor |
|---|---|---|---|
|  |  |  | *Attorney for Plaintiff* |

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812